Citation Nr: 1504658 
Decision Date: 01/30/15 Archive Date: 02/09/15

DOCKET NO. 10-26 569 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Newark, New Jersey


THE ISSUES

1. Entitlement to an initial rating in excess of 10 percent for left knee patellofemoral syndrome.

2. Entitlement to an initial rating in excess of 10 percent for left shoulder impingement syndrome and rotator cuff tendonitis.


REPRESENTATION

Veteran represented by: National Association of County Veterans Service Officers


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

T. Susco, Associate Counsel


INTRODUCTION

The Veteran served on active duty from September 1981 to April 1985, and from November 1988 to January 1993. 

In June 2012, the Veteran testified in a Travel Board hearing before the undersigned Veterans Law Judge. A copy of the hearing transcript is associated with the claims file. 

The issues on appeal were previously remanded by the Board in February 2014 for further evidentiary development of requesting outstanding private physical therapy records and to obtain a VA examination. This was accomplished, and the claims were readjudicated in a July 2014 supplemental statement of the case. 


FINDINGS OF FACT

1. For the entire period on appeal, the left knee disability has been manifested by subjective complaints of pain, weakness, buckling, and difficulty with prolonged sitting, standing, ambulation, and stair negotiation; objective findings include degenerative arthritis resulting in pain and limitation in motion. Incapacitating exacerbations, ankylosis, recurrent subluxation or lateral instability, dislocation of the semilunar cartilage, malunion or non-union of the tibia and fibula, or genu recurvatum, have not been shown. 

2. For the entire period on appeal, the left shoulder disability has been manifested by subjective complaints of pain, weakness, and "popping," which results in limitations of daily function, to include activities of daily living and lifting; objective findings include degenerative arthritis resulting in pain and noncompensable limitation in motion. Incapacitating exacerbations, scapulothoracic ankylosis, recurrent scapulohumeral instability, and impairment of the clavicle, scapula, or humerus, have not been shown.


CONCLUSIONS OF LAW

1. For the entire rating period on appeal, the criteria for a rating in excess of 10 percent for left knee patellofemoral syndrome have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1-4.7, 4.21, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes (DCs) 5003, 5256-5263 (2014). 

2. For the entire rating period on appeal, the criteria for a rating in excess of 10 percent for left shoulder impingement syndrome and rotator cuff tendonitis have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1-4.7, 4.21, 4.40, 4.45, 4.59, 4.71a, DCs 5003, 5024, 5200-5203 (2014). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Disability ratings are determined by evaluating the extent to which a veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing the symptomatology with the criteria set forth in the Schedule for Rating Disabilities (Rating Schedule). 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10 (2014). 

In evaluating a disability, the Board considers the current examination reports in light of the whole recorded history to ensure that the current rating accurately reflects the severity of the condition. The Board has a duty to acknowledge and consider all regulations that are potentially applicable. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). The medical as well as industrial history is to be considered, and a full description of the effects of the disability upon ordinary activity is also required. 38 C.F.R. §§ 4.1, 4.2, 4.10. 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7. Reasonable doubt regarding the degree of disability will be resolved in the veteran's favor. 38 C.F.R. § 4.3. 

When a claimant is awarded service connection and assigned an initial disability rating, separate disability ratings may be assigned for separate periods of time in accordance with the facts found. Such separate disability ratings are known as staged ratings. See Fenderson v. West, 12 Vet. App. 119, 126 (1999) (noting that staged ratings are assigned at the time an initial disability rating is assigned). 

The Court has emphasized that when assigning a disability rating it is necessary to consider functional loss due to flare-ups, fatigability, incoordination, and pain on movements. See DeLuca v. Brown, 8 Vet. App. 202, 206-07 (1995). The rating for an orthopedic disability should reflect functional limitation due to pain, which is supported by adequate pathology and evidenced by the visible behavior of the veteran undertaking the motion. Weakness is also as important as limitation of motion, and a body segment that becomes painful on use must be regarded as seriously disabled. A little used part of the musculoskeletal system may be expected to show evidence of disuse, either through atrophy, the condition of the skin, absence of normal callosity, or the like. See 38 C.F.R. § 4.40. 

The factors of disability reside in reductions of their normal excursion of movements in different planes. Instability of station, disturbance of locomotion, and interference with sitting, standing, and weight bearing are related considerations. See 38 C.F.R. § 4.45. It is the intention of the Rating Schedule to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimal compensable rating for the joint. 38 C.F.R. § 4.59. The application of 38 C.F.R. § 4.59 is not limited to arthritis-related claims. Burton v. Shinseki, 25 Vet. App. 1 (2011). 


Left Knee

In July 2009, the RO granted service connection for a left knee disability and assigned a 10 percent rating, which gave rise to this appeal. The Veteran contends that the left knee disability is more severe than presently evaluated, and productive of a greater degree of impairment than is reflected by the 10 percent rating now assigned. Specifically, he reports that, during the appeal period, he has experienced pain, weakness, and buckling in his left knee, which has resulted in limitations in his daily function, to include difficulty with prolonged sitting, standing, ambulation, and stair negotiation. 

The diagnostic codes that focus on limitation of motion of the knee are DCs 5260 and 5261. Normal range of motion of the knee is to zero degrees extension and to 140 degrees flexion. See 38 C.F.R. § 4.71a, Plate II. 

Under DC 5260, a 20 percent rating will be assigned for limitation of flexion to 30 degrees; and a 30 percent rating will be assigned for limitation of flexion to 15 degrees. Under DC 5261, a 20 percent rating will be assigned for limitation of extension to 15 degrees; a 30 percent rating will be assigned for limitation of extension to 20 degrees; a 40 percent rating will be assigned for limitation of extension to 30 degrees; and a 50 percent rating will be assigned for limitation of extension to 45 degrees. 

In a June 2009 VA examination, the Veteran complained of daily pain and occasional buckling but denied sensations of locking or instability, and any incapacitating episodes or flare-ups. Upon physical examination, there was full knee extension (to zero degrees) and 130 degrees of knee flexion with complaints of pain throughout both directions of movement. There was no change in the range of motion with repetitive testing. Stability testing of the knee ligaments and menisci were all within normal limits bilaterally and the left knee function was not additionally limited by pain, fatigue, weakness, or lack of endurance or coordination after repetitive use. 

In the July 2009 rating decision, the RO indicated that the 10 percent rating assigned was based upon the criteria under DC 5261, and the results of the June 2009 VA examination. Specifically, while the Veteran demonstrated full knee extension, which would be rated as noncompensable under DC 5261, he experienced pain during movement and was entitled to the minimal compensable rating of 10 percent.

In a December 2010 VA examination, the Veteran complained of pain with activities of daily living, stair negotiation, and with prolonged sitting, standing, and ambulation. He denied any incapacitating episodes or flare-ups. Upon physical examination, there was full, pain-free knee extension (to zero degrees) and 130 degrees of knee flexion with complaints of pain at the end range of movement. There was no change in the range of motion with repetitive testing. Stability testing of the knee ligaments and menisci were all within normal limits bilaterally and the left knee function was not additionally limited by pain, fatigue, weakness, or lack of endurance or coordination after repetitive use. 

At the June 2012 Travel Board, the Veteran indicated that he experienced pain with prolonged standing and walking. He also reported pain and limitation with movement into flexion and extension. See Hearing Transcript at 10-12.

In a third May 2014 VA examination, the Veteran complained of pain with prolonged sitting, standing, and ambulation; he denied any flare-ups. Upon physical examination, there was full, pain-free knee extension (to zero degrees) and 130 degrees of knee flexion with complaints of pain beginning at 120 degrees of flexion. There was no change in the range of motion with repetitive testing. Stability testing of the knee ligaments and menisci were again all within normal limits bilaterally and the left knee function was not additionally limited by pain, fatigue, weakness, or lack of endurance or coordination after repetitive use. Finally, the VA examiner noted the presence of degenerative arthritis in the Veteran's left knee as indicated by diagnostic imaging. 

Based on the above, the evidence of record does not establish that the Veteran's left knee disability warrants a rating in excess of 10 percent for any period on appeal. The Board has considered application of 38 C.F.R. §§ 4.40 and 4.45, and DeLuca for the entire appeal period, specifically the additional limitations of motion due to pain, fatigability, and weakness, in reaching the finding that a higher disability rating is not warranted. 

Although the record contains reports that the Veteran experienced pain during movement testing, such findings do not provide for a higher rating in this case. Indeed, the DeLuca factors go to additional loss of function caused by limitation of motion due to pain, fatigability, and weakness. As discussed above, even with consideration of the additional limitation of motion due to pain, the left knee disability does not manifest in a limitation of extension to 15 degrees required for a 20 percent rating. Therefore, the 10 percent rating currently assigned under DC 5261 and 38 C.F.R. § 4.59 is appropriate, and a higher rating is not warranted. 

The Board has additionally considered other diagnostic codes to provide the Veteran with the most beneficial disability rating for the left knee disability. See Schafrath, 1 Vet App. at 595. In this regard, as noted above, the evidence does not show a compensable limitation of motion of flexion (to 45 degrees) as to warrant a separate compensable rating for limitation of flexion. See VAOPGCPREC 09-04 (separate ratings may be awarded for compensable limitation of flexion and limitation of extension of the same knee joint); 38 C.F.R. § 4.71a, DC 5260.

The Board has also considered application of DC 5257, which refers to recurrent subluxation or lateral instability of the knee joint. In this regard, all three VA examination reports indicated no objective evidence of instability or recurrent subluxation of the left knee. Therefore, as no lateral instability or recurrent subluxation is shown, a separate rating under DC 5257 is not warranted.

In addition, the evidence, as a whole, does not reveal ankylosis, symptomatic conditions of the semilunar cartilage, impairment of the tibia and fibula by malunion or nonunion, or genu recurvatum; therefore, the criteria of DCs 5256, 5257, 5258, 5262, and 5263 do not apply.

Further, the Board has considered whether a higher rating under DC 5003 for degenerative arthritis is warranted. Under DC 5003, degenerative arthritis established by X-ray findings will be rated based on limitation of motion. When, however, the limitation of motion of the specific joint involved is noncompensable as in this case, a 20 percent rating is warranted if there is X-ray evidence of involvement of 2 or more joints, or 2 or more minor joint groups, and there are occasional incapacitating exacerbations.

Although DC 5003 does not define what constitutes an "incapacitating exacerbation," the analogous term "incapacitating episode" is defined elsewhere in the Rating Schedule for the musculoskeletal system in regards to intervertebral disc syndrome and in the Rating Schedule for the digestive system. See 38 C.F.R. § 4.71a, DC 5243, Note 1; see also 38 C.F.R. § 4.114, DCs 7345 and 7354, Notes (2) (2014). As used therein, an "incapacitating episode" is a period of acute signs and symptoms severe enough to require bed rest and treatment by a physician.

In this case, the evidence of record does not reflect occasional incapacitating exacerbations so as to warrant a higher rating. Specifically, all three VA examination reports indicate that the Veteran denied incapacitating episodes and flare-ups of his left knee disability. Additionally, during the June 2012 Board hearing, he denied flare-ups severe enough to prevent him from going to work. Therefore, a 20 percent rating under DC 5003 is not warranted. 

For these reasons, the preponderance of the evidence weighs against the assignment of an initial rating in excess of 10 percent for a left knee disability for the entire initial rating period on appeal. Further, the Board does not find that the initial rating assigned for the Veteran's left knee disability should be higher for any separate period based on the facts found during the appeal period. As such, an initial rating in excess of 10 percent for the left knee disability is not warranted.

Left Shoulder

In July 2009, the RO granted service connection for a left shoulder disability and assigned a 10 percent rating, which gave rise to this appeal. The Veteran contends that the left shoulder disability is more severe than presently evaluated, and productive of a greater degree of impairment than is reflected by the 10 percent rating now assigned. Specifically, he reports that, during the appeal period, he experienced pain, weakness, and "popping" in his left shoulder, which resulted in limitations in his daily function, to include activities of daily living and lifting. 

The RO indicated that the 10 percent rating was based upon the criteria found at 38 C.F.R. § 4.71a, DC 5024. DC 5024 represents tenosynovitis, which in turn is to be rated on limitation of motion as degenerative arthritis under DC 5003. 38 C.F.R. § 4.71a, DC 5024. As mentioned above, DC 5003 indicates that a disability will be rated based on limitation of motion under the appropriate diagnostic code(s) unless a noncompensable limitation of motion is found. 38 C.F.R. § 4.71a, DC 5003. 

The diagnostic code that focuses on limitation of motion of the shoulder is DC 5201. Normal range of motion of the shoulder is to 180 degrees flexion and to 180 degrees abduction. See 38 C.F.R. § 4.71a, Plate I. Disability ratings of the shoulder are assigned as either the major (dominant) arm or the minor (non-dominant) arm. According to the VA examination reports and the Veteran's testimony at the June 2012 Board hearing, he is left hand dominant. 

Under DC 5201, a 20 percent rating will be assigned for limitation of shoulder elevation in the dominant arm to shoulder level. A 30 percent rating will be assigned for limitation of shoulder elevation in the dominant arm to midway between the side and shoulder level. A 40 percent rating will be assigned for limitation of shoulder elevation in the dominant arm to 25 degrees.

In a June 2009 VA examination, the Veteran complained of daily pain and difficulty with lifting, overhead activities, and recreational activities. He denied any incapacitating episodes or flare-ups. Upon physical examination, there was 170 degrees of shoulder flexion with pain beginning at 100 degrees, and 179 degrees of shoulder abduction, with pain beginning at 90 degrees. There was no change in range of motion with repetitive testing. The left shoulder function was not additionally limited by pain, fatigue, weakness, or lack of endurance or coordination after repetitive use. 

At the June 2012 Travel Board hearing, the Veteran testified that he experienced constant pain in his left shoulder with increased pain and a "popping" sensation with overhead movements. He reported difficulty with lifting, sleeping, and performing household chores. See Hearing Transcript at 5, 7-10.

A December 2012 private physical therapy progress report indicated the Veteran attended ten physical therapy sessions between October and December 2012. He complained of constant pain in his left shoulder that increased with overhead activities and difficulty with activities of daily living. Range of motion was 134 degrees of painful left shoulder flexion that improved to 160 degrees of pain-free motion over the ten sessions. In addition, 130 degrees of painful left shoulder abduction did not improve over the ten sessions. 

In a May 2014 VA examination, the Veteran complained of constant pain that increased with overhead activities, and an inability to lift more than 10 pounds. He denied any incapacitating episodes or flare-ups. Upon physical examination, range of motion was 170 degrees of left shoulder flexion with complaints of pain beginning at 130 degrees of flexion, and 170 degrees of left shoulder abduction with complaints of pain beginning at 110 degrees. There was no change in the range of motion with repetitive testing and no evidence of instability or ankylosis. The left shoulder function was not additionally limited by pain, fatigue, weakness, or lack of endurance or coordination after repetitive use. The presence of degenerative arthritis was noted as indicated by diagnostic imaging. 

Based on the above, the evidence of record does not establish that the Veteran's left shoulder disability warrants a rating in excess of 10 percent disabling for any period on appeal. The Board has considered application of 38 C.F.R. §§ 4.40 and 4.45, and DeLuca for the entire appeal period, specifically the additional limitations of motion due to pain, fatigability, and weakness, in reaching the finding that the Veteran has limitation of motion to a noncompensable degree. 

Although the record contains reports that the Veteran experienced pain during movement testing, such finding does not provide for a higher rating. Indeed, the DeLuca factors go to additional loss of function caused by limitation of motion due to pain, fatigability, and weakness. As discussed above, even with consideration of the additional limitation of motion due to pain, the left shoulder disability only manifests limitation of motion to a noncompensable degree. Therefore, rating the left shoulder disability under DCs 5024 and 5003 is appropriate. 

As mentioned above, DC 5003 provides for a 20 percent evaluation in the absence of limitation of motion, if there is X-ray evidence of involvement of 2 or more joints and there are occasional incapacitating exacerbations. However, the evidence of record does not reflect occasional incapacitating exacerbations so as to warrant a 20 percent evaluation. Both VA examination reports indicate that the Veteran denied incapacitating episodes and flare-ups of his left shoulder disability. As indicated above, at the June 2012 Board hearing, he denied flare-ups severe enough to prevent him from going to work. Therefore, the Board finds that a 20 percent rating under DC 5003 is not warranted.

The Board has additionally considered other diagnostic codes to provide the Veteran with the most beneficial disability rating for the left shoulder disability. See Schafrath, 1 Vet App. at 595. In this regard, as noted above, during the entire rating period of appeal, the Veteran demonstrated a noncompensable limitation in motion during the appeal period even with consideration of pain (i.e., no limitation of motion even warranting a 10 percent rating under DC 5201); therefore, an initial disability rating in excess of 10 percent is not warranted under DC 5201 for limitation of motion. 

In addition, the evidence, as a whole, does not reveal ankylosis of the scapulothoracic articulation, recurrent dislocation of the scapulohumeral joint, or impairment of the clavicle, scapula, or humerus; therefore, the criteria of DCs 5200, 5202, and 5203 do not apply. 

For these reasons, the preponderance of the evidence weighs against the assignment of an initial rating in excess of 10 percent for a left shoulder disability for the entire initial rating period on appeal. Further, the Board does not find that the initial rating assigned for the left shoulder disability should be higher for any separate period based on the facts found during the appeal period. As such, an initial rating in excess of 10 percent for the left shoulder disability is not warranted.

With respect to both claims, the Board has considered whether referral for an extraschedular evaluation is warranted for the Veteran's left knee and left shoulder disabilities. In exceptional cases where the schedular evaluations are found to be inadequate, consideration of an extraschedular evaluation is made. 38 C.F.R. § 3.321 (2014); Thun v. Peake, 22 Vet. App. 111 (2008). 


In this case, the record does not establish that the rating criteria are inadequate. To the contrary, the very symptoms that the Veteran describes and the findings made by the various medical professionals, such as pain, including with prolonged sitting, standing, ambulation, and arthritis (left knee) and pain, including with sleeping, lifting, and overhead activities, and arthritis (left shoulder) are "like or similar to" those explicitly listed in the rating criteria, which considers symptoms such as arthritis and limitation of motion, including limitation of motion due to pain and other limiting factors. Mauerhan, 16 Vet. App. at 443. 

The Veteran has not expressly raised the matter of entitlement to an extraschedular rating. His contentions have been limited to those discussed above, i.e., that his left knee and left shoulder disabilities are more severe than reflected by the assigned ratings. In view of the circumstances, the Board finds that the rating schedule is adequate, even in regard to the collective and combined effect of all of the service-connected disabilities, and referral for extraschedular consideration is not warranted under in this case. Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014).

Moreover, the Board has considered whether the issue of entitlement to a total disability rating based on individual employability due to service-connected disabilities (TDIU) was reasonably raised by the record in this case. Neither the Veteran nor the evidence suggests unemployability due to the service-connected left knee or left shoulder disabilities. Rice v. Shinseki, 22 Vet. App. 447 (2009). The evidence of record indicates that he works in the field of information technology as a network engineer. While the record reflects increased pain while at work, including due to prolonged sitting and occasional lifting, there is no indication that he is rendered unable to work by his service-connected disabilities. Therefore, as the issue of TDIU is not reasonably raised by the record, it is not part of the rating appeal. 

Duties to Notify and Assist

Finally, the Veteran Claims Assistance Act of 2000 (VCAA), in part, describes VA's duties to notify and assist in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014). 

Here, as the appeal decided in this decision arises from the Veteran's disagreement with the initial evaluations following the grant of service connection for left knee and left shoulder disabilities, no additional notice is required. Once service connection is granted, the claim is substantiated, additional notice is not required, and any defect in notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007); VAOPGCPREC 
8-2003 (interpreting that separate notification is not required for the "downstream" issue of initial rating); 38 C.F.R. § 3.159(b)(3)(i) (2014) (reflecting that there is no duty to provide VCAA notice upon receipt of a notice of disagreement). 

With regard to the duty to assist, VA has made reasonable efforts to obtain relevant records and evidence. Specifically, the information and evidence that have been associated with the claims file include service treatment records, post-service VA and private treatment records, VA examination reports from June 2009, December 2010, and May 2014, and the Veteran's statements. 

As mentioned above, the Veteran was afforded VA examinations in June 2009, December 2010, and May 2014. Taken collectively, these VA examinations are found to be adequate for ratings purposes of the issues on appeal. The examiners reviewed the medical history and complaints, made clinical observations, and rendered opinions regarding the severity of the left knee and left shoulder disabilities. In addition, the examiners addressed the functional impact of the left shoulder and left knee disabilities upon ordinary conditions of daily life and work. 

As mentioned above, the Board previously remanded these issues in February 2014 to obtain private physical therapy treatment records. In February 2014, the RO sent correspondence to the Veteran requesting a signed VA Form 21-4142 Authorization and Consent to Release Information so VA could obtain these private physical therapy records. To date, VA has not received a completed VA 21-4142. 

Instead, the RO received a December 2012 private physical therapy progress report which detailed the Veteran's physical therapy treatment regarding his left shoulder disability only. As stated by the Court, the "duty to assist is not always a one-way street" and the veteran is obliged to cooperate in the development of the pending claim. Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). As ten months have passed without the Veteran submitting this signed authorization to release medical records, the Board will not delay adjudication any further; therefore, the Board will decide this matter based on the evidence of record as it is currently developed.

As such, the RO has provided assistance to the Veteran as required under 38 U.S.C.A. § 5103A and 38 C.F.R. § 3.159(c), as indicated under the facts and circumstances in this case. The Veteran has not made the RO or the Board aware of any additional evidence that needs to be obtained in order to fairly decide this appeal. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). Hence, no further notice or assistance to the Veteran is required to fulfill VA's duties to notify and assist in the development of the claim. 




 (CONTINUED ON NEXT PAGE)


ORDER

An initial rating in excess of 10 percent for left knee patellofemoral syndrome is denied. 

An initial rating in excess of 10 percent for left shoulder impingement syndrome and rotator cuff tendonitis is denied. 



____________________________________________
L. HOWELL
Veterans Law Judge, Board of Veterans' Appeals
Department of Veterans Affairs